# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY R.,[1]<br><br>        Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:20-cv-03489-MAA<br><br>**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On April 15, 2020, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this action is remanded for further administrative proceedings.

///

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**PROCEDURAL HISTORY**

On January 26, 2017, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on December 1, 2016. (Administrative Record [AR] 15, 182-90.) Plaintiff alleged disability because of "[resistant] scabies condition; psychosis disorder; major depression; acute anxiety; hopelessness; stress disorder; sleep disorder; loss of consciousness/fainting." (AR 64, 82.) After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 113.) During a hearing held on April 8, 2019, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert. (AR 30-48.)

In a decision issued on May 24, 2019, the ALJ denied Plaintiff's disability claims after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 15-25.) Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 1, 2016. (AR 17.) She had severe impairments consisting of "obesity; bilateral degenerative joint disease of the knees; depressive disorder; and anxiety disorder." (*Id*.) She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 18.) She had a residual functional capacity for medium work with further limitations. (AR 20.) She was unable to perform her past relevant work as a Substance Abuse Counselor or Mental Health Technician. (AR 20.) She could perform other work in the national economy, in the occupations of Linen Room Attendant, Counter Supply Worker, and Lamination Assembler. (AR 24.) Thus, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from December 1, 2016 through the date of the ALJ's decision. (AR 25.)

///

On February 26, 2020, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Thus, ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUE

The parties raise the following disputed issue: whether the ALJ improperly rejected Plaintiff's testimony regarding functional limitations. (ECF No. 23, Parties' Joint Stipulation ["Joint Stip."] at 2.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

///
///
///
///

# DISCUSSION

**A.  Legal Standard.**

An ALJ must make two findings in assessing a claimant's pain or symptom testimony.  SSR 16-3P, 2017 WL 5180304, at *3; *Treichler*, 775 F.3d at 1102. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Id*.; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Beginning on March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims.  *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on March 26, 2018, it is governed by SSR 16-3P.  *See id*. at *13 and n.27.  In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character."  SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5

4

(9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

### B. Background.

In 2015, while working as a substance abuse counselor, Plaintiff contracted lice and scabies after hugging a homeless couple. (AR 346.) Although her conditions were treated and cured, Plaintiff "continued to complain of feeling bugs crawling under her skin." (*Id.*) She took leave from work for approximately one year. (*Id.*) Plaintiff returned to work in June or July of 2016. (*Id.*)

On December 1, 2016, the alleged disability onset date, Plaintiff sought emergency medical treatment for anxiety. (AR 298.) She reported that her job involved too much work and that she felt overwhelmed. (AR 304.)

A few weeks later, in late December 2016, Plaintiff underwent a psychiatric examination. (AR 335-54.) In pertinent part, Plaintiff told the psychiatrist that on a typical day, she "pushes herself to get up and out of bed," "takes her 13-year-old daughter to school," comes home to shower and clean her house, and then "watches television for most of the day." (AR 338-39.)

After the incident with the lice and scabies, Plaintiff underwent several therapy sessions. She reported severe anxiety and depression, as well as the belief that she continued to have scabies. (*See, e.g.*, AR 1223, 1229, 1234, 1237, 1243). During some of the sessions, Plaintiff further reported have trouble sleeping, particularly because her father was staying with her after his surgery (AR 486, 1202, 1219), but she also commented that she felt better because she was taking care of him (AR 1219).

In addition to claiming disability because of her mental condition, Plaintiff claimed disability because of pain in her back and knees and because of obesity. (AR 33.) She was diagnosed with bilateral knee degenerative joint disease (AR

1113) and received cortisone injections in both knees (AR 1052, 1090). She was five feet four inches tall and weighed 298 pounds. (AR 1136.)

During the administrative hearing, Plaintiff testified about her condition and activities as follows:

She still has scabies, and she is unable to cure it. (AR 38.) She was diagnosed with a psychotic disorder, depression, and anxiety. (AR 39.) She also has arthritis in her knees and back pain. (*Id.*) She takes Gabapentin, Propranolol, Sertraline, Trazadone, Abilify, Atorvastatin, and Amlodipine. (AR 39-40.) Her medication side effects are dizziness, nausea, headaches, and drowsiness. (AR 39.)

She and her fifteen-year old daughter share a home with a roommate. (AR 35.) The daughter and the roommate complete all of the household chores, while Plaintiff does none of them. (AR 42-43.) Plaintiff is unable to attend her daughter's activities. (AR 41.) During a typical day, Plaintiff stays in bed "for the most part." (AR 43.)

In addition to testifying at the administrative hearing, Plaintiff completed a written report describing her level of functioning. (AR 235-43.) In pertinent part, Plaintiff wrote that she spends most of her days sterilizing her living space. (AR 236.) She occasionally takes her daughter to soccer practice, but she otherwise does not go anywhere on a regular basis. (AR 239.) Her doctors told her she has a "delusional parasitic disorder," but she believes she still has scabies. (AR 242.)

### C. Analysis.

The ALJ first found that Plaintiff's noted impairments could reasonably be expected to cause a number of symptoms Plaintiff has alleged. (AR 21.) However, the ALJ next found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely supported by the available evidence as a whole." (AR 22.) Specifically, the ALJ made the following findings:
///

> As previously discussed, she does not exhibit signs or symptoms of psychosis even though she reports tactile hallucinations associated with a delusional belief system; and she has not required inpatient treatment, voiced suicidal thoughts or acted out in bizarre or destructive ways. In fact, while stressed by her previous work setting and dynamics, [Plaintiff] has taken care of her father, continued to care for her daughter, maintained a relationship with her significant other and pursued disability [AR 338-39, 1219, 1247].

(AR 22.)

The Court reviews each reason in turn.

### 1. No signs or symptoms of psychosis.

The ALJ found that Plaintiff "does not exhibit signs or symptoms of psychosis even though she reports tactile hallucinations associated with a delusional belief system." (AR 22.)

An ALJ may reject a claimant's subjective symptoms testimony, in part, because of a lack of corroboration by objective medical evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Here, however, the record showed that Plaintiff did exhibit signs or symptoms of psychosis. The objective medical evidence showed a psychiatric diagnosis of a psychotic disorder. (AR 486, 490, 1195, 1214.) Moreover, this diagnosis was evidenced by signs and symptoms that included tactile

hallucinations, auditory hallucinations, visual hallucinations, depression, anxiety, and insomnia. (AR 1197, 1199, 1223.) Nothing in the record suggests that the physicians who reported these signs and symptoms felt they were not genuine. *See Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008) ("There is nothing in the record to suggest that [the physician] disbelieved [claimant's] description of her symptoms, or that [the physician] relied on those descriptions more heavily than his own clinical observations[.]") (citing *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999)). Thus, the record fails to support the reasoning here that Plaintiff "does not exhibit signs or symptoms of psychosis even though she reports tactile hallucinations associated with a delusional belief system." *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (ALJ's comment that nobody observed the claimant's mental symptoms was not clear and convincing where the record did not support that characterization).

The Commissioner's argument does not call for a different result. The Commissioner cites evidence showing that, at other times, Plaintiff exhibited no signs or symptoms of psychosis. (Joint Stip. at 11 [citing AR 347, 484, 1203, 1207, 1211].) But this cited evidence shows only that Plaintiff sometimes did not exhibit signs or symptoms, while evidence for other times shows that she did. The evidence does not show, as the ALJ stated here, that Plaintiff "does not exhibit signs or symptoms of psychosis." The Court must review the reason as it was stated. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). The stated reason was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### 2. No inpatient treatment, suicidal thoughts, or acts of a bizarre or destructive nature.

The ALJ found that Plaintiff "has not required inpatient treatment, voiced suicidal thoughts or acted out in bizarre or destructive ways." (AR 22.)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). Moreover, an ALJ reasonably may conclude that "the medical record was inconsistent with the severity of the limitations [the claimant] described in [her] testimony." *See Ahearn v. Saul*, 988 F.3d 1111, 1116-17 (9th Cir. 2021); *see also Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) (an ALJ reasonably may conclude that a claimant's subjective complaints are exaggerated).

Here, Plaintiff did not testify that she required inpatient treatment, voiced suicidal thoughts, or acted out in bizarre or destructive ways. Thus, the reasoning that Plaintiff "has not required inpatient treatment, voiced suicidal thoughts or acted out in bizarre or destructive ways" (AR 22) does not reveal an inconsistency between Plaintiff's testimony and the medical record.

Moreover, it is not clear from the record that inpatient treatment, suicidal thoughts, or acting out in bizarre or destructive ways would reasonably be expected for a claimant, such as Plaintiff, alleging a psychotic disorder as a basis for disability. With respect to the absence of inpatient treatment, the ALJ did not explain why inpatient treatment, rather than the psychiatric medications Plaintiff was taking (AR 39-40), would reasonably have been expected here. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (an ALJ's "non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment" was not clear and convincing); *see also Revels*, 874 F.3d at 667 (ALJ's finding of conservative treatment was erroneous in part where he did not explain "why he deemed this treatment 'conservative'").

With respect to the absence of evidence that Petitioner voiced suicidal thoughts or acted out in bizarre or destructive ways, the Commissioner does not

require that claimants display such extreme behavior in order to be found disabled. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Thus, this reason was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### 3. Care for father and daughter.

The ALJ found that, "while stressed by her previous work setting and dynamics, [Plaintiff] has taken care of her father and continued to care for her daughter." (AR 22.)

In assessing a claimant's testimony about her symptoms, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Such activities may include the care of family members. *See Rollins*, 261 F.3d at 857 (holding that an ALJ's adverse credibility determination was supported by substantial evidence where the claimant's daily activities included caring for her children's needs and leaving the house daily for appointments and shopping).

The record does not clearly demonstrate that Plaintiff's care for her father and daughter were inconsistent with Plaintiff's alleged symptoms. First, with respect to Plaintiff's father, the only relevant evidence is that he stayed with her following his surgery, which led Plaintiff to comment, "I feel better b/c I take care of my father." (AR 1219.) But Plaintiff never specified for the record what taking care of her father involved. Thus, the Court cannot properly review whether this vague evidence was inconsistent with Plaintiff's testimony about her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 ("But the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original).

Second, with respect to Plaintiff's daughter, the record showed that Plaintiff's caretaking was minimal and decreasing. In late December 2016, a few weeks after Plaintiff stopped working on December 1, 2016, Plaintiff told a psychiatrist that she takes her daughter to school on a typical day, to soccer practice two times per week, and to games on Saturdays. (AR 338-39.) In March 2017, Plaintiff wrote in her function report that she makes sure her daughter eats and takes her to soccer practice (AR 236), but the dropping off at soccer practice occurred once per week (AR 239). In April 2019, Plaintiff testified at the administrative hearing that she was unable to attend her daughter's activities. (AR 41.) This evidence of Plaintiff's limited childcare activities is not clearly inconsistent with Plaintiff's testimony that she spends most of the day lying in bed. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (evidence of claimant's limited childcare activities was not inconsistent with her testimony that she spent most of the day lying in bed).

Thus, this reason was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### 4. Relationship with significant other and pursuit of disability.

The ALJ found that Plaintiff "maintained a relationship with her significant other and pursued disability." (AR 22.)

This reason is unsupported by the record or has no apparent relevance. The record does not show that Plaintiff had a relationship with a significant other since her alleged disability onset date of December 1, 2016. Moreover, the fact that Plaintiff pursued disability, without more, has no apparent relevance to the question of whether her subjective symptom testimony should be found credible. Thus, this was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

///

### D. Conclusion.

Clear and convincing reasons based on substantial evidence were not provided to discount Plaintiff's subjective symptom testimony. Although the Commissioner posits another reason to discount Plaintiff's testimony, premised on Plaintiff's positive response to treatment (Joint Stip. at 11-12), the ALJ did not state this reason to reject Plaintiff's subjective symptom testimony. Thus, the Court may not review this argument. *See Connett*, 340 F.3d at 874. In sum, reversal is warranted.

## II. Remand for Further Administrative Proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Here, the record is not free from conflicts and ambiguities, and all essential factual issues have not been resolved. For example, as the Commissioner points out, the record contains some evidence of Plaintiff's positive response to treatment (Joint Stip. at 11-12), which the ALJ did not expressly consider. Given this conflict and ambiguity, the Court declines Plaintiff's request to credit her testimony as true. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017) ("A district court cannot proceed directly to credit a claimant's testimony as true and then look to the record to determine whether there are any issues outstanding, as 'this reverses the required order of analysis.'") (quoting *Dominguez*, 808 F.3d at 409); *Treichler*, 775 F.3d at 1106 ("[A] reviewing court is not required to credit claimants' allegations regarding

the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.").

Rather, the record raises factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Burrell*, 775 F.3d at 1141 (remand is appropriate where the record creates doubt as to whether claimant is disabled); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the existing record does not clearly demonstrate that the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the final decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: April 9, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE